J-S34023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.T.Y., MATERNAL GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1031 MDA 2021 |

Appeal from the Decree Entered July 1, 2021
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s): A-9114

BEFORE: DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:     **FILED: JANUARY 10, 2021**

Appellant M.T.Y. ("Maternal Grandmother") appeals from the July 1, 2021 order denying her petition for the involuntary termination of parental rights of M.D. ("Father") with respect to M.D. ("Child"). We affirm.

The Child was born in July 2014 to Father and natural mother ("Mother"). In May 2016, Maternal Grandmother was granted sole legal and physical custody of the Child through a private custody order. Subsequently, a new order was entered in October 2017, which gave Maternal Grandmother primary physical custody of the Child and Father partial periods of custody as agreed to by the parties. Maternal Grandmother also has custody of the Child's younger sister, B.D., as a kinship provider through Luzerne County Children and Youth Services ("CYS").[1]

---

[1] B.D. and CYS are not involved in the instant case.

When B.D. was born in 2018, Maternal Grandmother allowed the Child to live with Father and Mother so that they could bond as a family. However, when CYS became involved after B.D. was born, the Child and B.D. went to live with Maternal Grandmother in November 2018.

Mother passed away on February 27, 2020. After Mother passed away, Maternal Grandmother and Father would arrange for Father to have visits and/or phone calls with the Child and B.D. The last visit by Father occurred in July 2020. On February 10, 2021, Maternal Grandmother filed a petition for involuntary termination of parental rights against Father pursuant to 23 Pa.C.S.A. § 2511(a)(1). Hearings on the termination petition were held on April 7, 2021, May 10, 2021, and June 30, 2021.

The trial court summarized Maternal Grandmother's testimony as follows:

> The Maternal Grandmother testified that the last time that Father had personal contact with [the Child] was July 5, 2020. The Maternal Grandmother further indicated that between August 2020 to February [10], 2021, [F]ather did not have any telephone contact, nor any physical visits with [the Child]. [N.T., 4/7/21,] at 14[-15]. The Maternal Grandmother stated that the last time that Father had a telephone call with [the Child] was July 12, 2020. *Id.* at 15.
>
> The Maternal Grandmother testified that after she notified Father that Mother passed away, she met Father at a mall in Hazleton, Pennsylvania sometime in March 2020 in order to have visits with his daughters, B.D. and [the Child]. *Id.* at 18. The Maternal Grandmother indicated that between the time that Mother died on February 2[7], 2020 and July 5, 2020, Father had three additional physical visits with [the Child], in addition to telephone contact with the [C]hild. The Maternal Grandmother indicated that she did not know the

- 2 -

number of telephone calls made between Father and [the Child] during the timeframe of February 28 and July 5 of 2020. She stated that there could have been a dozen. According to Maternal Grandmother, Father would usually text her or ask to speak to the children and they would either call or Face-Time. *Id.* at 18-19. The Maternal Grandmother could not specify upon which dates Father would contact her in order to speak to the children. She indicated that when Father was not working, she and Father would arrange for him to speak to [the Child] and her sister. *Id.* at 19.

The Maternal Grandmother indicated that between August 2020 until the filing date of the petition to terminate Father's parental rights on February 10, 2021, Father did not have any telephone contact with [the Child]. N.T.[,] 5/10/2021[,] at 7. The Maternal Grandmother testified that in July 2018, the two minor children[,] B.D.[] and [the Child,] were brought to her by Lackawanna County Children and Youth representatives. *Id.* at 9.

The Maternal Grandmother indicated that the last text message she received from Father was on July 12, 2020. *Id.* at 11. She indicated that Father bought Christmas gifts in December 2019 for the children. According to the Maternal Grandmother, in July 2020, Father brought a Kindle Fire, a laughing monkey, a toy gun, a jiggling little hamster, and other toys to the children. *Id.* at 15. However, she stated that Father did not purchase any gifts for the children in December of 2020 or for any other holidays. *Id.* at 12-13. The Maternal Grandmother further testified that between August 2020 and February 2021, Father did not provide any educational items or toys for [the] children, write her any letters, provide clothing, food, or other essential items. Father also did not participate in any decisions regarding school, nor did he inquire as to how [the Child] was doing in school. Father also did not participate in school events, nor assist the [C]hild with any schoolwork or homework assignments. *Id.* at 13-14.

Trial Court Opinion, filed 8/30/21, at 4-6.

Maternal Grandmother admitted that during the supervised video phone calls that were set up by CYS between Father and B.D.,[2] Father would ask to speak to the Child during those phone calls. N.T., 4/7/21, at 16; N.T., 5/10/21, at 16. However, Maternal Grandmother stated she would not allow Father to speak with the Child because those calls were not "set up for [the Child]," but rather were set up for Father and B.D. N.T., 5/10/21, at 16, 18.

Maternal Grandmother testified that Father has never missed a child support payment. *Id.* at 21.

Father testified at the termination hearing that after Mother passed away, Maternal Grandmother would not allow him to see the Child. *Id.* at 37. He stated that when Mother was alive, he helped Mother as much as he could with whatever the children needed and participated in the children's medical appointments and school activities. *Id.* at 37, 49. Father testified that between August 2020 to February 2021, he attempted to contact the Child several times; however, Maternal Grandmother would deny his requests and completely cut off his visits. *Id.* at 31. Father said that at the end of his supervised video phone calls with B.D., he would repeatedly ask to speak to the Child, but Maternal Grandmother would not allow him to talk to her. *Id.* at 31, 45.

Father acknowledged that he could have filed a petition alleging that Maternal Grandmother was in contempt of their custody order. *Id.* at 41, 50.

---

[2] Visits were done with B.D. via video phone calls, instead of in person visits, because of the COVID-19 pandemic.

However, he testified that the reason that he did not file a contempt petition was due to the advice of his counsel in B.D.'s dependency case. Father stated that his attorney told him to focus on B.D.'s case in dependency court first and then focus on the custody issues in the Child's case. *Id.* at 41-42, 46. Father eventually filed a petition for modification of custody order in the instant case on March 3, 2021, after the filing of the involuntary termination petition. *Id.* at 41.

Father testified that at the time of the termination hearing, he had been sober for two and one-half years. *Id.* at 38. He stated he started a blacktopping business one year ago and has consistently paid child support to Maternal Grandmother. *Id.* at 32. Father testified he is now in a much better position to care for the Child than previously. *Id.* at 46. He stated that as part of B.D.'s case with CYS, he completed parenting education, drug and alcohol services, and a psychological evaluation. *Id.* at 36.

Rose Norton, a support worker from CYS, testified that she supervised some of the video phone calls between Father and B.D. *Id.* at 58. She confirmed that during those calls, Father asked Maternal Grandmother if he could speak with the Child, but Maternal Grandmother refused Father's requests. *Id.* at 58-59, 63. Norton further testified that on one occasion, Father asked Maternal Grandmother if he could call the Child after the video call was over, but Maternal Grandmother did not respond and then Father and Maternal Grandmother had a verbal altercation until the call ended. *Id.* at 59.

Tammy Purpura, another support worker from CYS, testified that she also supervised some of the video calls between Father and B.D. *Id.* at 65. Purpura also confirmed that Father asked to speak to the Child during those phone calls, but Maternal Grandmother would not allow him to speak with the Child because the phone calls were strictly set up for B.D. *Id.* at 66. Purpura testified that although the phone calls were set up for B.D., CYS would not have prevented the Child from participating in the phone calls with Father. *Id.* at 67. She further stated that Father told her that he wanted the Child to remain with Maternal Grandmother but he wanted more visitation with the Child. *Id.* at 66. Purpura advised Father that CYS did not have custody of the Child and that it was a private matter between him and Maternal Grandmother. *Id.* at 66-67. Father told her that he would be retaining an attorney. *Id.* at 69.

Following the termination hearing, the court denied Maternal Grandmother's involuntary termination petition. This timely appeal followed. Maternal Grandmother raises the following issues for our review:

1. Whether the trial court abused its discretion, committed an er[r]or of law, and/or there was insufficient evidentiary support for its finding that [Maternal Grandmother's] petition for involuntary termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) should be denied?

    A. Whether the trial court erred in finding [F]ather's explanation for his lack of contact with his minor child to be reasonable?

Maternal Grandmother's Br. at 5.

We apply the following standard of review:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

*In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012) (citations omitted).

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* (internal quotation marks and citation omitted in original).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory

- 7 -

grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Maternal Grandmother sought the involuntary termination of Father's parental rights on the following grounds:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) and (b).

Maternal Grandmother asserts that the court "abused its discretion, committed an error of law, and/or that there was insufficient evidentiary support for the [c]ourt's decision to find [F]ather's explanation for his lack of contact with his minor child to be reasonable." Maternal Grandmother's Br. at 13.

Pursuant to Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (citation omitted). We have stated:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to consider Section 2511(b). *In re M.X.G.*, 933 A.2d 647, 652 (Pa. 2007) (*per curiam*) (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

Here, the trial court found Father failed to perform his parental duties in the six months prior to the filing of the termination petition. Trial Ct. Op. at 6. However, the court determined that Father's explanation for his lack of contact with the Child was reasonable. *Id.* at 16. The court took into consideration the barriers in place which precluded Father from having contact with the Child, particularly Maternal Grandmother's unilateral decision to refuse to allow Father to speak with the Child. *Id.* at 16, 19. The court noted that between August 2020 and the time of the filing of the termination petition in February 2021, Father made numerous attempts to contact the Child, but Maternal Grandmother always denied his requests. *Id.* at 7. The court found Maternal Grandmother's testimony that she did not hear Father make that request during a video phone call not to be credible because two CYS support workers corroborated Father's testimony that Maternal Grandmother denied his requests to speak to the Child. *Id.* at 15-16. The court was also troubled by the fact that Maternal Grandmother was only permitting Father to speak with one child, B.D., and precluding him from speaking with his other child, even though both children resided with her. *Id.* at 16.

The court acknowledged that Father filed his petition to modify the private custody order after the involuntary termination petition was filed and it did not consider the filing as an effort made by Father. *Id.* at 11. However, the court found that "Father's actions [in filing his petition to modify custody] bolsters Father's credibility in explaining his reason for not filing the petition for modification earlier due to the advice he took from his prior counsel to first

focus on the minor child, B.D., and once that case resolved to then focus on [the Child]." *Id.* at 11-12.

Since the court found that Father had a reasonable explanation for not having contact with the Child for six months before the filing of the termination petition, it determined that it need not consider the effect of termination of parental rights on the Child pursuant to Section 2511(b). *Id.* at 17.

Upon review of the record, we discern no abuse of discretion. The court found that Father's explanation for his lack of contact with the Child was reasonable. This finding was supported by competent evidence. There was no dispute that Maternal Grandmother denied Father contact with the Child in the six months prior to the filing of the termination petition. As was required, the court considered the whole history of the case and did not mechanically apply the six-month statutory provision. *See In re B.,N.M.*, 856 A.2d at 855. Moreover, we will not disturb the trial court's credibility determinations. *See In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (stating "the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by finder of fact"). Accordingly, we agree with the trial court's conclusion that Maternal Grandmother failed to prove by clear and convincing evidence that Father's parental rights should be terminated pursuant to Section 2511(a)(1).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2022